UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

NATHANIEL WARD et al.,

               Plaintiffs,              Case No. 1:13-cv-580

v.                                   Honorable Janet T. Neff

G. THOMPSON et al.,

               Defendants.

_____/

## OPINION

This is a civil rights action brought by two state prisoners pursuant to 42 U.S.C. § 1983. The Court has granted both Plaintiffs leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* second amended complaint (docket #27) indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs' action against MTF Defendants Kitchen, Groenhof and Thompson will be dismissed with prejudice for failure to state a claim. However, Plaintiffs' action against STF Defendants Daniels, Shaheen, Sorenson, Betts and Bennett will be dismissed without prejudice under Federal Rule of Civil Procedure 21 for misjoinder.

**Factual Allegations**

Plaintiffs Nathaniel Ward-El[1] and Terry Scott are presently incarcerated at the Chippewa Correctional Facility (URF) and the Central Michigan Correctional Facility (STF), respectively, but complain of events that occurred at STF and the West Shoreline Correctional Facility (MTF).  In their *pro se* second amended complaint (docket #27), Plaintiffs Ward-El and Scott are suing the following STF Defendants:  Assistant Resident Unit Supervisors (ARUS) Terri Fighter Daniels, J. Shaheen and David Betts, and Librarian Technicians Melinda Bennett and Marcie Sorenson (collectively, "STF Defendants").  They are also suing the following MTF Defendants:  Law Librarian Technician G. Thompson, Grievance Coordinator and Hearings Investigator James Kitchen and Business Manager Dave Groenhof (collectively, "MTF Defendants").

Plaintiff Scott first complains about a major misconduct ticket that he received.  On March 14, 2013, Plaintiff Scott reviewed the major misconduct ticket and requested to meet with MTF Hearings Investigator Kitchen.  Without being given "reasonable notice" or a meeting with Kitchen, Plaintiff Scott states that his misconduct hearing was held on March 18, 2013.  (2d Am. Compl., docket #27, Page ID#321.)  As a result, Plaintiff Scott complains that Kitchen violated his due process rights, his First Amendment rights, MICH. COMP. LAWS § 791.252 and the Michigan Department of Corrections (MDOC) Employee Handbook.

Around April 9, 2013, Plaintiff Scott met with Defendant Kitchen to review a grievance.  Plaintiff Scott also questioned Kitchen about another grievance filed on April 1, 2013, which was on Kitchen's desk.  Apparently, Kitchen had not yet addressed that grievance.  On May

---

[1]Plaintiff Nathaniel Ward refers to himself as Nathaniel Ward-El.  For purposes of this opinion, the Court will use Ward-El to refer to this Plaintiff.

1, 2013, Kitchen told Plaintiff Ward-El to inform Plaintiff Scott that he never received the grievance in question.  Plaintiff Scott alleges that Defendant Kitchen violated his due process rights by failing to review the grievance, violated MDOC Policy Directive 02.03.100, "Employee Discipline," (effective Apr. 14, 2008), MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances," (effective July 9, 2007), the MDOC Employee Handbook and 18 U.S.C. § 242.

Plaintiff Ward-El then raises several claims regarding the funds in his prison trust account.  Plaintiff Ward-El alleges that MTF prison officials claim that he owes a tax obligation of $350.45 but Ward-El has never seen any court order or proof of this obligation.  Because of his debt, Plaintiff Ward-El complains that his prison account balance is only $10 or $11.  As a result, he is not eligible for indigent status and cannot purchase over-the-counter medications, typing paper, carbon paper, copies for legal documents, personal hair care items, personal skin care items and dental items.  Plaintiff Ward-El complains that prison officials are violating his right to access the courts and MDOC Policy Directive 03.03.130, ¶ C, "Humane Treatment and Living Conditions for Prisoners," (effective Feb. 23, 2009).

Plaintiff Ward-El also complains that MDOC Policy Directive 04.02.105, ¶ W, "Prisoner Funds," (effective Jan. 1, 2010), which authorizes prison officials to take the filing fee from unsuccessful prisoner litigants, is an unconstitutional attempt to stop inmates from accessing the courts.  Plaintiff Ward-El further complains of the following state law violations due to the removal of money from his prisoner trust fund account:  MICH. COMP. LAWS § 24.207(K), MICH. STATUTES ANNOTATED § 3.506(107)(K), Administrative Code, Rule 791.6639, Administrative Procedures Act of 1969, MDOC Policy Directive 01.04.110, ¶¶ A, B, C,  "Administrative Rules, Policies & Procedures,"(effective Aug. 1, 2013), MDOC Policy Directive 03.02.130,

"Prisoner/Parolee Grievances," (effective July 9, 2007) and the Michigan constitution.  Plaintiff Ward-El contends that the court's order regarding the filing fee also violates state law because it is essentially a "'writ[] of garnishment' which requires the garnishee defendant to turn over any of Plaintiff-Appellant's assets," that might come into its possession.  (2d Am. Compl., docket #27, Page ID#327.)

Plaintiff Ward-El also argues that the court orders directing the MDOC to take 50% of all the funds that he receives until his debt of $717.00 is paid is essentially a writ of garnishment in violation of MICH. COMP. LAWS § 600.4012(1) and MICH. CT. R. 3.101(B)((1)(A)(II) & (E)(2). Plaintiff Ward-El contends that it is an unconstitutional attempt to hinder a prisoner's right to access the courts.  Plaintiff further complains that the practice violates the Equal Protection Clause, the United States Supreme Court's holding in *James v. Strange*, 407 U.S. 128 (1972), 15 U.S.C. § 1673(a), and the Michigan constitution.

Plaintiff Ward-El complains that the court essentially appointed a receiver over his wages but the procedures to appoint a receiver were not followed.  Under MICH. COMP. LAWS § 600.6104, Plaintiff Ward-El alleges that a motion, notice and a hearing on the motion are required under the Fourteenth Amendment and MICH. CT. R. 2.119(C).

As to MTF Defendant Thompson, Plaintiff Ward-El argues that Thompson violated his First Amendment right to access the courts by failing to copy a policy directive that Plaintiff needed for *Ward v. Luckey*, No. 2:12-cv-14875 (E.D. Mich. Oct. 11, 2013).  Plaintiff Ward-El further argues that Defendant Thompson violated his due process rights and equal protection rights by denying Plaintiff access to the law library.  Further, Plaintiff complains that Defendant Thompson violated MDOC Policy Directive 05.03.116, ¶¶ K, L, "Prisoners' Access to the Courts," (effective

Oct. 17, 2014), the Michigan Constitution, and federal statutes, 18 U.S.C. § 242, 18 U.S.C. § 1509 and 18 U.S.C. § 1346.  Plaintiff Ward-El also seeks to have Thompson prosecuted for violating MDOC Policy Directive 03.02.130.

In their second amended complaint, Plaintiffs Ward-El and Scott also assert constitutional claims against STF Defendants that occurred after the filing of their original complaint.  (*See* 2d Am. Compl., docket #27, Page ID#337.)  The Court will address the improper joinder of STF Defendants in Section I below.

For relief, Plaintiff requests monetary damages and injunctive relief.

## Discussion

I.      Improper Joinder of Parties

Plaintiffs Scott and Ward-El's second amended complaint involves new claims against STF Defendants, who allegedly violated Plaintiff Ward-El's constitutional rights after the filing of Plaintiffs' original complaint.  Plaintiff Ward-El's claims against the STF Defendants include violating Ward-El's First Amendment right against retaliation and his Eighth Amendment right against cruel and unusual punishment.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, while Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the

action."  Rule 18(a) states:  "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Where multiple parties are named, as in this case, the analysis under Federal Rule of Civil Procedure 20 precedes that under Federal Rule of Civil Procedure 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all . . .

*Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (quoting *Garcia v. Munoz*, 2008 WL 2064476, at *3 (D. N. J. May 14, 2008) (quoting, Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 Federal Practice & Procedure Civil 3d, § 1655)).  Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact."  *Proctor*, 661 F. Supp. 2d at 778.  A federal court may consider many different factors when determining whether civil rights claims arise from the same transaction or occurrence, including, "the time period during which the alleged acts occurred; whether the acts [] . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations."  *Id.* (*quoting Nali v. Mich. Dep't of Corrs.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

In the present case, Plaintiffs assert claims against Defendants at two different prisons, MTF and STF, and during two different time periods.  The allegations against the MTF

Defendants occurred prior to the filing of the original complaint on May 28, 2013, and the allegations against the STF Defendants occurred after the May 28, 2013 filing.  (*See* Am. Compl., docket #27, Page ID#337.)  Moreover, only Plaintiff Ward-El asserted claims against the STF Defendants in the second amended complaint.[2]  As a result, the allegations against the MTF Defendants and STF Defendants did not arise from the "same transaction, occurrence, or series of transactions or occurrences" or "include a question of law or fact common to all defendants."  *See* FED. R. OF CIV. P. 20(a)(2); *see also Proctor*, 661 F. Supp. 2d at 778 (quotation omitted).

Moreover, Plaintiff Ward-El's attempt to join together a number of unrelated Defendants into one action would thwart the purpose of the Prison Litigation Reform Act (PLRA), which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.  *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).  Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form.  *See* 28 U.S.C. § 1915(b)(1).  The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied.  28 U.S.C. § 1915(g).  The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation.  *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

"In light of the PLRA provisions . . . to continue the practice of allowing joinder of claims which are not in compliance with Rule 18 and Rule 20 [of the Federal Rules of Civil Procedure] would be to defeat, or at least greatly dilute, the clear intent of the fee payment and

---

[2]In its order to file a second amended complaint, the Court specifically required Plaintiffs Scott and Ward-El to include all of the Defendants that Plaintiffs Ward-El and Scott *jointly* intend to sue and a concise statement of all of the claims that Plaintiffs Ward-El and Scott *jointly* intended to raise.  (*See* Feb. 20, 2014 Order, docket #25, Page ID#310.)

three-strikes provisions of the statute." *Walls v. Scott*, No. 2:97-cv-0393, 1998 WL 574903, at *3 (N.D. Tex. Aug. 28, 1998). Other courts have reached similar conclusions. *See Green v. Callahan*, No. 2:14-cv-11453, 2014 WL 1652335, at *3 (E.D. Mich. Apr. 23, 2014) (dismissing improperly joined claims because they would thwart the PLRA and avoid the plaintiff from incurring a "strike," for purposes of Section 1915(g)); *Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F.Supp.2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule); Cf. *Proctor*, 661 F.Supp.2d at 777 (refusing to allow the joinder in a single multi-plaintiff complaint of a variety of claims, because "[E]ach separate claim by each plaintiff will require a particularized analysis regarding statute of limitations, exhaustion of administrative remedies, and on the substance.").

To allow Plaintiffs to proceed with improperly joined STF Defendants in a single action would permit them to circumvent the PLRA's filing fee provisions. The Court recognizes that misjoinder of parties is not normally sufficient to dismiss an action in its entirety, although misjoined parties can be dismissed from the action by the Court. *See Proctor*, 661 F. Supp. 2d at 781 (citing FED. R. CIV. P. 21) (additional citations omitted); *see also Carney v. Treadeau*, No. 2:07-

cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008) (In the event of misjoinder, "the court

has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just;' or (2)

any claims against misjoined parties 'may be severed and proceeded with separately.' ") (internal

quotation omitted).

Because Plaintiffs originally raised claims only against MTF Defendants and because Plaintiffs'

claims against the STF Defendants are wholly unrelated to the original claims, the Court will dismiss

Plaintiffs' claims against the STF Defendants on the basis of misjoinder.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice.").  The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.      Defendant Kitchen

Plaintiff Scott complains that he did not receive "reasonable notice" or a meeting with Defendant Kitchen before his major misconduct hearing, in violation of his due process rights. (Am. Compl., docket #27, Page ID#321) Plaintiff Scott also alleges that Kitchen did not address one of his grievances in violation of his due process rights. Plaintiff Scott further argues that Kitchen violated MDOC Policy Directives 02.03.100 and 03.02.130, the MDOC Employee Handbook, 18 U.S.C. § 242 and his First Amendment rights.

### 1.      Due Process - Major Misconduct

Plaintiff Scott first complains that he did not receive due process in relation to his major misconduct conviction. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural

safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff Scott does not allege that his major misconduct conviction resulted in any loss of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted of crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id.* at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff Scott has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff Scott has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Plaintiff Scott does not allege that his conviction resulted in an extension of his sentence or some other atypical hardship, therefore, his due process claim fails.

### 2. Due Process - Grievance Process

Plaintiff Scott complains that Defendant Kitchen did not address all of his grievances. Plaintiff Scott, however, has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th

Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff Scott has no liberty interest in the grievance process, Defendant Kitchen's conduct did not deprive him of due process.

Even if Plaintiff Scott had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances ( i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff Scott were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

For all these reasons, Plaintiff Scott fails to state a due process claim against Defendant Kitchen for failing to address all of Plaintiff Scott's grievances.

### 3.    First Amendment

Plaintiff Scott alleges that Defendant Kitchen violated his First Amendment rights with respect to his misconduct hearing but does not provide any allegations to support his constitutional claim. Accordingly, Plaintiff Scott's First Amendment claim is wholly conclusory.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. at 555.  Plaintiff Scott therefore fails to state a First Amendment claim against Defendant Kitchen.

### 4.   18 U.S.C. § 242

Plaintiff Scott alleges that Defendant Kitchen violated 18 U.S.C. § 242, which makes it a crime for a state official to act willfully and under color of law to deprive a person of his/her rights protected by the Constitution.  As a private citizen, Plaintiff Scott may not enforce this statute.  *See Abner v. Gen. Motors*, 103 F. App'x 563, 566 (6th Cir. 2004) (finding that a private citizen cannot initiate a federal criminal prosecution under 18 U.S.C. § 241); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242.").  Plaintiff lacks "a judicially cognizable interest in the prosecution or nonprosecution" of another.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  Furthermore, the foregoing statute does not provide for a private right of action.  *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (finding that "the district court properly dismissed [the plaintiff's] claim pursuant to 18 U.S.C. §§ 241 or 242 because [the plaintiff] has no private right of action under either of these criminal statutes").  Thus, Plaintiff Scott fails to state a claim under 18 U.S.C. § 242.

### 5.   State Law

Plaintiff Scott alleges that Defendant Kitchen's conduct violated Michigan statutes, the Michigan constitution, the Michigan Employee Handbook and MDOC Policy Directives.  Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.

1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiffs assertion that Defendant

Kitchen violated state law therefore fails to state a claim under § 1983.  Additionally, Defendant

Kitchen's alleged failure to comply with an administrative rule or policy does not itself rise to the

level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody

v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th

Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-

23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not

rise to the level of a constitutional violation because policy directive does not create a protectible

liberty interest).

To the extent that Plaintiff Scott seeks to invoke this Court's supplemental

jurisdiction over state-law claims, the Court declines to exercise jurisdiction over Plaintiff Scott's

state-law claims against Defendant Kitchen.  In determining whether to retain supplemental

jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance

of multiplicity of litigation and balance those interests against needlessly deciding state law issues."

*Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a

district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental

jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining

state-law claims.  *Id.*  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v.

HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch

Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations

weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff Scott's

state-law claims against Defendant Kitchen will be dismissed without prejudice.

### B.    Defendant Groenhof

Plaintiff Ward-El claims that he was wrongly assessed a tax obligation without a court order in violation of his due process rights.   Plaintiff Ward-El also complains that the imposition of filing fees from unsuccessful ligation violates his constitutional rights.   Finally, Plaintiff Ward-El raises several state law claims.

### 1.    Due Process - Tax Obligation

Plaintiff first provides that prison officials have been unlawfully taking funds out of his prison account for an unsubstantiated tax obligation of $350.45.   Plaintiff Ward-El's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).   Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.   If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."   *Parratt*, 451 U.S. at 537.   This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.   *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).   Because Plaintiff Ward-El's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.   *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).   Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.   *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff Ward-El has not sustained his burden in this case.   Plaintiff Ward-El has not alleged that state post-deprivation remedies are inadequate.   Moreover, numerous state post-

deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his

own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR.,

Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit

claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS

§ 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan

law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and

any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS

§ 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-

deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff Ward-El

does not allege any reason why a state-court action would not afford him complete relief for the

deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff Ward-El

fails to state a due process claim against Defendant Groenhof for the payment of the tax obligation

from his prison trust account.

### 2.        First & Eighth Amendments - Filing fees

Plaintiff Ward-El complains that at least 50% of his prison wages are used for

unsuccessful filing fees, which chills his right to sue prison officials.

The PLRA has provisions that prevent assessments from being so burdensome that

they would stop a prisoner from being able to bring suit.  Moreover, the Sixth Circuit has held that

"prisoners asserting civil claims in federal court have never been guaranteed a 'free ride.'"  *Hampton*

*v. Hobbs*, 106 F.3d 1281, 1285 (6th Cir. 1997).  Filing fees are collected through monthly payments

equal to 20 percent of the prisoner's income until paid.  28 U.S.C. § 1915(b)(2).  No payment is

required if the prisoner's monthly income is less than $10.00.  *Id.*; *see also* 28 U.S.C. § 1915 (b)(4)

(prisoner can file suit even if he has no assets at all); *Hampton*, 106 F.3d at 1284 -85 (finding the fee provisions of the PLRA did not violate a prisoner's constitutional right of access to the courts, the Due Process Clause, the Equal Protection Clause or the Double Jeopardy Clause.)  Under the PLRA, a prisoner must pay the full amount of the $350.00 filing fee.  28 U.S.C. § 1915(b)(1).  In addition to this case, Plaintiff Ward-El is paying the filing fee in at least five other civil rights cases.[4] Plaintiff Ward-El may also have filing fees or other debt arising from cases filed in other courts. Congress did not carve out an exception for payment of fees and costs by a prisoner who files more than one lawsuit.  As the Seventh Circuit has stated:

> [W]e hold that the fees for filing the complaint and appeal cumulate.  Otherwise a prisoner could file multiple suits for the price of one, postponing payment of the fees for later-filed suits until after the end of imprisonment (and likely avoiding them altogether).  The PLRA is designed to require the prisoner to bear some marginal cost for each legal activity.  Unless payment begins soon after the event that creates the liability, this will not happen.  A prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on.  Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid -- though by then a prisoner is likely to have three strikes and to owe all future filing fees in full, in advance.

*Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997).  This Court adopts the reasoning of the Seventh Circuit.  Moreover, it is Plaintiff Ward-El who has chosen to bring several lawsuits, and by so doing, he is responsible for the appropriate fees and costs in each one.

Because Plaintiff Ward-El only has $10 left in his account, he complains that he cannot buy over-the-counter medications, typing paper, carbon paper, copies for legal documents, personal hair care items, personal skin care items and dental items.

---

[4]*See Ward v. Marietti et al.*, Case No. 1:15-cv-295 (W.D. Mich.); *Ward v. Campbell et al.*, Case No. 2:15-cv-37 (W.D. Mich.); *Ward v. Campbell et al.,* Case No. 2:15-cv-27 (W.D. Mich.); *Ward v. Kafczynski et al.,* Case No. 2:14-cv-96  (W.D. Mich.); *Ward v. Dunklow et al.,* Case No. 1:13-cv-304 (W.D. Mich.).

To the extent Plaintiff Ward-El alleges that he cannot buy typing paper, carbon paper and copies of legal documents, Plaintiff raises an access-to-the-courts claim. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating

> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391

(6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous

claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis*

changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of

action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415

(2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the

underlying cause of action and its lost remedy must be addressed by allegations in the complaint

sufficient to give fair notice to a defendant."  *Id.* at 416.

Plaintiff Ward-El does not allege that he suffered an actual injury to any pending or

contemplated litigation.  Consequently, Plaintiff Ward-El fails to state a claim for a violation of his

First Amendment right of access to the courts.

Plaintiff Ward-El also contends that without money in his prison account, he was

unable to purchase over-the-counter medication and items for proper hygiene from the prison store,

such as skin care products, hair care products and dental items.  The Eighth Amendment imposes

a constitutional limitation on the power of the states to punish those convicted of crimes.

Punishment may not be "barbarous" nor may it contravene society's "evolving standards of

decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits

conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff does not allege that he has been deprived of basic hygiene supplies, such as soap, toothpaste and toilet paper.  *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (discussing cases involving the deprivation of hygiene items).  Moreover, Plaintiff does not allege that he suffered any adverse health effects or extreme discomfort due to the absence of those items. *See Argue v. Hofmeyer*, 80 F. App'x at 427, 430 (6th Cir. 2003) (holding that a prisoner had failed to state an Eighth Amendment claim because he did not allege a complete denial of hygiene products or that he "suffered extreme discomfort" as a result of the denial); *Moore v. Chavez*, 36 F. App'x

- 21 -

169, 171 (6th Cir. 2002) (finding that the plaintiff had failed to allege that "he suffered extreme discomfort due to his inability to purchase the items or that he was completely denied the basic elements of hygiene").  Because the denial of skin care products, hair care products, dental items and over-the-counter medication did not rise to the level of a serious risk to Plaintiff Ward-El's health or safety, Plaintiff Ward-El fails to state an Eighth Amendment claim.

### 3.    Equal Protection Clause - Filing Fees

Plaintiff Ward-El claims that a court's order to pay the filing fee under the PLRA violates the United States Supreme Court's holding in *James v. Strange*, 407 U.S. 128 (1972), and, therefore, the Equal Protection Clause.  The *James* decision is wholly inapplicable to Plaintiff's claim.  The *James* Court dealt with a Kansas recoupment statute for court-appointed attorney fees.  In *James*, the Supreme Court found unconstitutional a Kansas recoupment statute that permitted the state to recoup court-appointed attorney fees without permitting the defendant to raise any of the defenses permitted to other civil judgments.  Most importantly, the recoupment provision did not permit the defendant to defend the execution of the recoupment based on his inability to pay.  *Id.* at 135-36.  As a consequence, the Court found that the Kansas statute violated the Equal Protection Clause.  *Id.* at 141-42.

Unlike the Kansas statute, the PLRA does not provide for the recoupment of court-appointed attorney fees.  It provides for an installment plan for filing fees in civil actions.  The Sixth Circuit specifically has held that the PLRA does not violate the Equal Protection Clause in *Hampton*, 106 F.3d at 1284-85.  Accordingly, Plaintiff Ward-El fails to state an equal protection claim.

#### 4.       15 U.S.C. § 1673(a)

Plaintiff Ward-El complains that Defendant Groenhof violated the garnishment provisions of the Consumer Credit Protection Act.  Several courts have held that the Consumer Credit Protection Act does not provide for a private cause of action.  *Colvert v. Roling*, 233 F. App'x 587 (8th Cir. 2007) (a private right of action does not exist under Consumer Credit Protection Act section governing restrictions on garnishment of wages); *Le Vick v. Skaggs Cos.*, 701 F.2d 777 (9th Cir. 1983); *Snapp v. U.S. Postal Serv.*, 664 F.2d 1329 (5th Cir. 1982); *McCabe v. Eureka*, 664 F.2d 680 (8th Cir. 1981); *Agg v. Flanagan*, 855 F.2d 336 (6th Cir. 1988) (opining in dissent that there is no implied private cause of action for damages resulting from violation of statute setting maximum limit upon amount of wages which can be garnished under the Consumer Credit Protection Act, 15 U.S.C. § 1673);  .  The foregoing courts have also noted that § 1676 provides that "'the Secretary of Labor . . . shall enforce provisions of this Subchapter.'" *Le Vick*, 701 F.2d at 779 (quoting 15 U.S.C. § 1676).  As there is no implied private right of action under the garnishment provisions of the Consumer Credit Protection Act, the Court will dismiss Plaintiff Ward-El's claim under 15 U.S.C. § 1676.

#### 5.       State Law

As previously discussed, to the extent Plaintiff Ward-El seeks relief against Defendant Groenhof for violations of MDOC Policy Directives, Michigan statutes and rules, and state law on garnishment and receivorship, Plaintiff Ward-El fails to state a claim under § 1983.  The Court also declines to exercise supplemental jurisdiction over Plaintiff Ward-El's state-law claims against Defendant Groenhof.

### C.    Defendant Thompson

Plaintiff Ward-El argues that MTF Defendant Thompson violated his First Amendment right to access the courts by failing to copy a policy directive that Plaintiff needed for his civil rights action, *Ward v. Luckey*, No. 2:12-cv-14875 (E.D. Mich. Oct. 11, 2013). Plaintiff Ward-El also argues that Defendant Thompson violated MDOC Policy Directive 05.03.116, ¶¶ K, L, MDOC Policy Directive 03.02.130, the Michigan Constitution, 18 U.S.C. § 242, 18 U.S.C. § 1509 and 18 U.S.C. § 1346. Plaintiff Ward-El further states that Defendant Thompson violated his due process rights and equal protection rights "by denying Plaintiff [Ward-El] access to the law library MDOC Policy Directive 05.03.116 Prisoners' Access to the Courts Section (K)(L)." (2d Am. Compl., docket #27, Page ID#340.)

### 1.    Access to the Courts

Plaintiff Ward-El argues that Defendant Thompson violated his First Amendment right to access the courts by failing to provide him with a copy of a policy directive for a pending civil rights case. As a previously stated, it is clearly established that prisoners have a constitutionally protected right of access to the courts, and reasonable access to the law library. *See Bounds*, 430 U.S. at 821. For a First Amendment claim, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Talley-Bey*, 168 F.3d at 886; *Knop*, 977 F.2d at 1000. In addition, a plaintiff must describe the underlying cause of action and its lost remedy in his complaint. *Christopher*, 536 U.S. at 415-416 (citation omitted).

Plaintiff Ward-El alleges that Defendant Thompson prevented him from copying a policy directive to provide as an exhibit in a pending civil rights case, *Ward v. Luckey*, No. 2:12-cv-

14875 (E.D. Mich. Oct. 11, 2013).[5]  Plaintiff Ward-El, however, does not allege how his civil rights action was injured by failing to provide the exhibit.  *See Lewis*, 518 U.S. at 349.  Moreover, Plaintiff Ward-El did not describe the underlying cause of action and its lost remedy in the pending case.  *See Christopher*, 536 U.S. at 415-16.  Plaintiff Ward-El therefore fails to state a First Amendment access-to-the-courts claim against Defendant Thompson.

### 2.       Due Process & Equal Protection Clauses - Law Library

Plaintiff Ward-El claims that Defendant Thompson violated his due process rights and equal protection rights by denying Plaintiff Ward-El access to the law library to obtain a copy of a MDOC policy directive.

The Fourteenth Amendment protects individuals from being deprived of life, liberty or property without due process of law.  U.S. CONST. AMEND. XIV.  The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  Plaintiff Ward-El does not have a property or liberty interest in access to the law library.  *See Jordan v. Logan*, 32 F. App'x 958, 958 (9th Cir. 2002) (holding that the plaintiff did not have a property or liberty interest in access to the library); *Carlock v. Osborne,* No. 4:14CV-P14-M, 2014 WL 2218211, at *4 (W. D. Ky. May 28, 2014) (holding that the plaintiff failed to state

---

[5]The Court notes that the district court dismissed Plaintiff Ward-El's action in *Ward v. Luckey*, No. 2:12-cv-14875, Order & J., docket ##27, 28  (E.D. Mich. Oct. 11, 2013) without prejudice so Plaintiff Ward-El may file the action again.

a due process claim because there is no constitutionally protected right of access to a law library);
*Howard v. Osborne,* No. 4:13CV-P129-M, 2014 WL 1491245, at *2 (W.D. Ky. Apr. 15, 2014)
(holding that the lack of access to legal material or a law library does not state a due process claim)
(citing *Bradley v. Mason*, 833 F.Supp.2d 763, 773 (N.D. Ohio 2011) ("[T]he lack of a law library
does not per se deny the accused [of] due process."). Without a property or liberty interest, Plaintiff
Ward-El fails to state a due process claim for access to the law library.

Plaintiff Ward-El also raises an equal protection claim because he was denied access
to the law library. The Equal Protection Clause commands that no state shall "deny to any person
within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state
practice generally will not require strict scrutiny unless it interferes with a fundamental right or
discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312
(1976). Plaintiff Ward-El does not suggest that he is a member of a suspect class, and "prisoners
are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,*
411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).
A fundamental right is one that is explicitly or implicitly guaranteed by the Constitution. *San
Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973). The right of access to the courts is
a fundamental right protected by the constitution. *Lewis*, 518 U.S. at 350; *Ward v. Dyke*, 58 F.3d
271, 275 (6th Cir. 1995). The right of access to the courts has never been equated with the access
of legal materials at the prison library. *See Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985);
*see also Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish
relevant actual injury). Because Plaintiff Ward-El's claim for access to the law library is not
guaranteed by the Constitution, it is not a fundamental right.

As neither a fundamental right nor a suspect class is at issue, Plaintiff Ward-El's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff Ward-El must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff Ward El's equal protection claim is wholly conclusory. Under *Iqbal*, 556 U.S. at 678-69, and *Twombly*, 550 U.S. at 555, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. Plaintiff Ward-El does not attempt to identify any other prisoner who is similarly situated, much less that he was intentionally treated differently. *See Vill. of Willowbrook*, 528 U.S. at 564. Accordingly, Plaintiff Ward-El fails to state an equal protection claim for access to the law library.

### 3.   Federal criminal statutes

Plaintiff Ward-El alleges that Defendant Thompson has violated 18 U.S.C. § 242, 18 U.S.C. § 1509 and 18 U.S.C. § 1346. As the Court previously discussed, there is no private right of action for 18 U.S.C. § 242. Likewise, there is no private cause of action for unlawful obstruction of justice, 18 U.S.C. § 1509. *See, e.g., Hamilton v. Reed*, 29 F. App'x 202, 204 (6th Cir. 2002) ("Hamilton possesses no private right of action against the defendants for alleged violations of 18

U.S.C. §§ 1505, 1506, and 1509.").  Rather, the United States Attorney can enforce those statutes by criminal prosecution.  Finally, 18 U.S.C. § 1346 is the citation for the definition of "scheme or artifice to defraud."  Because it is just a definition, Plaintiff Ward-El cannot bring a claim under this statute.  Accordingly, Plaintiff Ward-El fails to state a claim under 18 U.S.C. § 242, 18 U.S.C. § 1509 and 18 U.S.C. § 1346 against Defendant Thompson.

### 4.      State Law

Plaintiff Ward-El alleges that Defendant Thompson violated MDOC Policy Directives and Michigan statutes.  As previously discussed, Plaintiff Ward-El fails to state a claim under § 1983 for state-law claims, including violations of MDOC Policy Directives and Michigan statutes.  The Court also declines to exercise supplemental jurisdiction over Plaintiff Ward-El's state-law claims against Defendant Thompson.

### D.      Motion for Summary Judgment

Because this Court is dismissing Plaintiffs' action for failure to state a claim, Plaintiff Ward-El's motion for summary judgment (docket #39) will be denied as moot.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' action against MTF Defendants Kitchen, Groenhof and Thompson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).   The Court also determines that Plaintiffs' action against STF Defendants

Daniels, Shaheen, Sorenson, Betts and Bennett will be dismissed without prejudice under Federal Rule of Civil Procedure 21 for misjoinder.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiffs appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiffs are barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If they are barred, they will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.


Dated: __June 29, 2015_____        __/s/ Janet T. Neff_____
                                                                          Janet T. Neff
                                                                          United States District Judge